**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**JEFFREY BRICK,**
                **Plaintiff,**

-vs-                                               **Case No.  2:05-cv-81-FtM-29DNF**

**UNUM LIFE INSURANCE COMPANY OF AMERICA,**

                **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR LEAVE TO AMEND COMPLAINT (Doc. No. 20)** |
| **FILED:** | **May 26, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Plaintiff is requesting leave to amend his Complaint a second time to add claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq*. and join new defendants. Defendant objects to this amendment. Plaintiff's original action was filed under Employee Retirement Income Security Act ("ERISA") asserting a breach of fiduciary duty in the denial of insurance benefits to Plaintiff, and a breach of fiduciary duty in the wrongful denial of insurance benefits.

**I. Rule 16, Good Cause**

Defendant first argues that Plaintiff has failed to show good cause under Rule 16(b), Federal Rules Civil Procedure to allow this amendment. Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." A scheduling order generally controls the course of action unless modified. *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). To modify a scheduling order, a party must show good cause, and the party must show that despite the party's diligence, the terms of the scheduling order could not be met. *Id.*, citing Fed.R.Civ.P. 16. If the court finds that the party lacked due diligence, then the inquiry into good cause is ended. *Lord v. Fairway Electric Corp.*, 223 F.Supp.2d 1270, 1277 (M.D. Fla. 2002). The Eleventh Circuit found three factors to consider in assessing diligence: "1) the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; 2) the information supporting the proposed amendment was available to the plaintiff; and 3) even after acquiring information, the plaintiff delayed in asking for amendment." *Id.*, citing *Sosa v. Airprint Systems, Inc.*, 133 F.3d at 1418.

In the instant case, the Court held a Preliminary Pretrial Conference on April 26, 2005, to set the scheduling dates in the case. On that same day, the Scheduling Order (Doc. 18) was entered. The Court drafted the Scheduling Order specifically for the special circumstances of ERISA cases. It sets forth when the administrative record was to be filed, and when the motions for judgment on the record were due. It did not include a date to amend the complaint. Although Plaintiff's counsel did discuss the possibility of amending the Complaint for a second time at the Preliminary Pretrial Conference, Plaintiff did not file his request until May 26, 2005, which was four days prior to the administrative

record being due for filing. In the ERISA portion of this case, the administrative record is the only discovery allowed, therefore, upon the filing of the record, the discovery period is completed. Plaintiff has not shown good cause why he did not file the RICO claim with his original complaint. The RICO claim changes the entire case in that the Court would have to allow for a discovery period which would delay the case. The Court finds that Plaintiff has not shown good cause to allow him to amend his complaint for a second time. However, the Court will continue its analysis pursuant to the Rules concerning amending pleadings.

**II. Rule 15**

Federal Rule of Civil Procedure 15(a)[1] provides that after a responsive pleading is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires."  The decision whether to permit an amendment is within the sound discretion of the court, however, the Supreme Court has held that the words "leave shall be freely given" must be heeded. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).  Consequently, the Court must find a justifiable reason in denying a

---

[1] For joinder of additional parties, the Court must look to Fed.R.Civ.P. 19 as well. Rule 19, Fed.R.Civ.P. provides in part as follows:

> (a) **Persons to be Joined if Feasible.**  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Defendant does not argue that Plaintiff failed to meet the standards of Rule 19.

request for leave to amend. *Id*. "[T]he Supreme Court indicated that a court should deny leave to amend a pleading only when: (1) the amendment would be prejudicial to the opposing party, (2) there has been bad faith or undue delay on the part of the moving party, or (3) the amendment would be futile." *Taylor v. Florida State Fair Authority*, 875 F.Supp. 812 (M.D. Fla., 1995), citing *Foman*, 317 U.S. at 182.

### A. Undue Delay

Defendant argues that the Second Amended Complaint would cause undue delay and prejudice. A court may deny a motion for leave to amend if the court finds undue delay and undue prejudice to the defendants. *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000). As stated above, the first Amended Complaint only alleged an ERISA violation which would not require the parties to engage in any discovery other than providing the administrative record. Allowing the amendment would delay this case and cause undue prejudice to Defendant due to the amount of discovery that would be needed. The Court concludes that Plaintiff delayed in requesting the amendment, the amendment would cause great delay in the case, and Defendant would be unduly prejudiced by the amendment.

### B. Futility

Next, Defendant argues that the amendments would be futile. A denial of leave to amend is justified when the allegations in the amended complaint are subject to dismissal and the amendment would be futile. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004). The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule

12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied. *Herring v. Beasley*, 2005 WL 1475304, *2 (S.D. Ala. 2005), citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). Therefore, the proposed Second Amended Complaint must be analyzed under the traditional 12(b)(b)(6) prism to determine whether it is futile. When the Court decides a motion to dismiss, it must accept as true all factual allegations in the Complaint. *Hughes v. United States*, 110 F.3d 765, 767 (11th Cir. 1997); *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1010 (11th Cir. 1992). The Complaint must be viewed and all reasonable inferences must be made in favor of the plaintiff. *Sawinski v. Bill Currie Ford, Inc.*, 866 F.Supp. 1383, 1385 (M.D. Fla. 1994), citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A Complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (footnote omitted); *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001) (*en banc*).

Defendant argues that ERISA is an exclusive remedy for Plaintiff's loss, and therefore, Plaintiff is not permitted to bring a RICO action. ERISA does contain a comprehensive legislative scheme for enforcement and regulation of employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 2495 (2004). The purpose of ERISA is to provide a uniform regulatory scheme for employee benefit plans and making the regulations an exclusive federal concern. *Id*. The ERISA legislative scheme would be undermined if the plan participants and beneficiaries were free to obtain state law remedies. *Id*. "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id*. ERISA clearly pre-empts state law claims raising the same issues. The legislation does not pre-empt a RICO action based

on other grounds.  Therefore, the Court concludes that Plaintiff is not precluded from joining a RICO action.

Defendant also contends that Plaintiff is unable to allege a pattern of racketeering activity and therefore, amending the complaint would be futile.  "In order to survive a motion to dismiss in a civil RICO case, a plaintiff must show a 'pattern of racketeering activity' by alleging that the defendants committed two qualifying predicate acts." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087 (11th Cir. 2004), See also, 18 U.S.C. §1961(5).  The two predicate acts must be distinct but related. *William v. Mohawk Industries, Inc.*, 411 F.3d 1252, 1256-7 (11th Cir. 2005).  Further, under Fed.R.Civ.P. 9(b), allegations of fraud must be "stated with particularity."

Under 18 U.S.C. §1961(1)(F), racketeering activities include any act that is related to 18 U.S.C. §1341 relating to mail fraud, and §1343 relating wire fraud.  Plaintiff does claim that Defendants participated in the racketeering activities of wire fraud, mail fraud, converting assets for disability benefits, and committing perjury. However he does not tie these allegations of racketeering activities to the factual allegations in the Second Amended Complaint.

To try to allege a claim for a pattern of racketeering activities, Plaintiff claims that since July 1, 1999, UNUM Life Insurance Company of America ("UNUM") implemented an enterprise-wide deceitful approach to claims handling.  (Com[2]. ¶21).  Plaintiff alleges that Defendants Mohney and Chandler introduced this deceitful approach which required senior management to direct and intervene in the claims review process of the claims handlers.  (Com. ¶¶21-22).  If the claims handlers did not follow senior management's recommendations, then claims handlers were given negative employment

---

[2] "Com." refers to the Second Amended Complaint which is attached to the Motion for Leave to File Second Amended Complaint (Doc. 20, Exhibit A).

consequences, and conversely, the claims handlers were rewarded if they reached their claim termination and denial goals. (Com. ¶24). Mohney and Chandler implemented other policies with the goal of terminating and denying claims. (Com. ¶25). These policies included requiring in-house physicians to use special forms, and requiring physicians to amend, supplement or rewrite their reports. (Com. ¶29-30). Defendants used a list of physicians who agreed with these policies. (Com. ¶33). In his case, Plaintiff asserts that his claim was sent to the wrong department in UNUM. (Com. ¶42). Defendant Pincelli who was Plaintiff's claims handler recommended that Plaintiff receive long term disability benefits on March 31, 2004. (Com. ¶49). Defendant Davis retained an in-house doctor to review Plaintiff's case. (Com. ¶51). The in-house physician found Plaintiff able to perform the majority of his job requirements. (Com. ¶52).

The above allegations do not amount to a pattern of racketeering activity that is required in the statute. Plaintiff alleges generally that Defendants have engaged in activities which are directed at denying or terminating disability claims. These activities do not correspond to the definition of "racketeering activities" that is listed in 18 U.S.C. §1961(1). Plaintiff does allege that UNUM engaged in illegal activities, such as mail fraud, wire fraud, unlawful conversion of assets in an employee pension benefit plan, obstruction of justice, and unlawful tampering with witnesses. However, the facts do not support any mail fraud, wire fraud, unlawful conversion of assets in an employee pension benefit plan, obstruction of justice or unlawful tampering with a witness. Plaintiff does allege a claim for denial of benefits under ERISA, but has not shown that his RICO claims in Counts III, IV, V and VI would survive a motion to dismiss. Therefore the Court concludes that these claims are futile, and Plaintiff should not be granted leave to file a Second Amended Complaint.

**III. Conclusion**

Based upon Plaintiff's failure to allege a claim under RICO, his delay in bringing the claim, the delay the RICO claim would cause, and the undue prejudice to Defendant, the Court respectfully recommends that the Motion for Leave to File a Second Amended Complaint be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 8th day of September, 2005.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies:

All Parties of Record